UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| HILARIO ORTIZ-CALDERON,<br><br>Petitioner,<br><br>v.<br><br>UNITED STATES OF AMERICA,<br><br>Respondent. | CASE NO. C19-CV-5010 BHS<br><br>(15-CR-5133 BHS)<br><br>ORDER DENYING PETITIONER'S MOTION TO VACATE, SET ASIDE, OR CORRECT SENTENCE |

This matter comes before the Court on Petitioner Hilario Ortiz-Calderon's ("Petitioner") motion to vacate, set aside, or correct his 2017 judgment and sentence pursuant to 28 U.S.C. § 2255. Dkt. 1. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. RELEVANT FACTUAL & PROCEDURAL BACKGROUND**

In 2015 Petitioner was charged by a three-count indictment with possession of methamphetamine with intent to distribute, felon in possession of a firearm, and unlawful

re-entry after deportation. *United States v. Ortiz-Calderon*, No. CR 15-5133BHS ("CR"), Dkt. 12. Petitioner pled guilty to the felon in possession and unlawful re-entry charges, *id.* Dkts. 51, 52, 91, 92, but proceeded to a bench trial on the methamphetamine charge, *id.* Dkts. 99, 100, 102, 121. Before trial, Petitioner moved to suppress firearms and methamphetamine seized from a search of his house and statements he made to law enforcement. *Id.*, Dkt. 35. Regarding suppression of the contraband, Petitioner argued that neither he nor his wife, Sandra Mercado ("Mercado"), voluntarily consented to the search of their home and its outbuildings. *Id.* Petitioner and Mercado had each signed written consent to search forms around the time of Petitioner's arrest. *Id.* Petitioner alleged that their consent to search was not valid because neither he nor Mercado spoke English, they had only given consent because the officers threatened to remove their disabled children if they did not consent, and they did not understand their right to refuse consent. *Id.* Regarding suppression of his statements, Petitioner argued that officers questioned him after his arrest but before advising him of his *Miranda* rights. *Id.*

The Court held an evidentiary hearing on Petitioner's motion to suppress. *Id.*, Dkt. 53. The Court heard testimony from several officers present during Petitioner's arrest and the search of his home. Neither Petitioner nor Mercado testified. Relevant to the instant motion, Petitioner contends that attorney Sarah J. Perez ("Perez"), who represented Petitioner on the motion to suppress and at trial, failed to investigate Mercado's version of events including her English comprehension and failed to call her as a witness at the

hearing.[1] Dkt. 2 at 6. Petitioner asserts that Mercado would have provided testimony that conflicted with the officers' testimony regarding her consent to search or lack thereof. *Id.*

At the end of the suppression hearing, the Court found that Petitioner and Mercado had voluntarily consented to a search of their house, including the garage. *Id.*, Dkt. 56. The Court further found that Petitioner was not questioned before he was read his *Miranda* rights in Spanish, that Petitioner had knowingly, intelligently and voluntarily waived those rights, and therefore his statements were admissible. *Id.*

Petitioner proceeded to a bench trial on the methamphetamine charge. *Id.*, Dkts. 99, 100, 102, 121. After trial, the undersigned convicted Petitioner of possession of methamphetamine with intent to distribute. *Id.*, Dkt. 121. The Court sentenced Petitioner to a total sentence of 132 months.[2]

Petitioner appealed the denial of his motion to suppress to the Ninth Circuit. Dkt. 1 at 2. The Circuit affirmed the undersigned's ruling in its entirety in a memorandum disposition. *United States v. Ortiz-Calderon*, 739 F. App'x 402, 403 (9th Cir. 2018). On December 24, 2018, Petitioner mailed, and thus filed,[3] a motion to vacate, set aside, or

---

[1] After trial, the Court granted Petitioner's motion to discharge Perez. CR Dkts. 126, 129. Assistant Federal Public Defenders John Carpenter and Colin Fieman were appointed, but the Court also granted Petitioner's motion to discharge them. *Id.*, Dkts. 130, 134. The Court then appointed attorney Zenon P. Olbertz and denied Petitioner's subsequent motion to discharge him. *Id.*, Dkts. 144, 146. Olbertz withdrew after sentencing, *id.*, Dkts. 157, 158, and the Court appointed another attorney to represent Petitioner on appeal, *id.*, Dkt. 162.

[2] The Court ordered the sentence to run concurrently to the sentence it imposed on revocation of Petitioner's supervised release. *See United States v. Calderon*, No. CR 08-5312BHS, Dkt 54.

[3] Rule 3(d) of the Rules Governing Section 2255 Cases for the United States District Courts (prisoner pleading filed upon mailing).

reduce sentence pursuant to 28 U.S.C. § 2255, Dkt. 1, and a statement of facts and legal authorities in support of the motion, Dkt. 2. On April 5, 2019, Respondent United States of America ("the Government") responded. Dkt. 8. On April 24, 2019, Petitioner replied. Dkt. 14. On April 26, 2019, the Government filed a declaration from Perez. Dkt. 13 ("Perez Decl."). On May 6, 2019, Petitioner surreplied. Dkt. 16.[4]

## II. DISCUSSION

Petitioner asserts a claim of ineffective assistance of counsel based on two legal theories alleging inadequate investigation. Dkt. 1. First, Petitioner contends that Perez failed to investigate key facts and witnesses he alleges would have supported his lack of consent theory on the motion to suppress. *Id.* at 4. Second, Petitioner contends Perez failed to investigate his predicate offenses, specifically (1) an underlying criminal conviction that formed the basis for count two, felon in possession of a firearm, and (2) an order of removal that formed the basis for count three, unlawful re-entry. *Id.* at 4–5. Petitioner asks the Court to vacate his conviction and sentence on all three counts. *Id.* at 12.

**A.    Legal Standards**

   **1.    28 U.S.C. § 2255**

Under § 2255, the Court may grant relief to a federal prisoner who challenges the imposition or length of his incarceration on the ground that: (1) the sentence was imposed

---

[4] Petitioner's motion for leave to file a surreply is granted. Petitioner deposited his reply in the prison mail system two days before the Government filed Perez's declaration. Dkts. 13, 14. Consequently, Petitioner did not receive an adequate opportunity to address the declaration in reply.

in violation of the Constitution or laws of the United States; (2) the Court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. 28 U.S.C. § 2255(a).

A prisoner filing a claim under § 2255 is entitled to an evidentiary hearing "[u]nless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." *Id.* § 2255(b). The Ninth Circuit has characterized this standard as requiring an evidentiary hearing when "the movant has made specific factual allegations that, if true, state a claim on which relief could be granted." *United States v. Leonti*, 326 F.3d 1111, 1116 (9th Cir. 2003) (citing *United States v. Schaflander,* 743 F.2d 714, 717 (9th Cir. 1984)).

### 2. Ineffective Assistance of Counsel

The Sixth Amendment guarantees a criminal defendant the right to effective assistance of counsel. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court evaluates ineffective assistance of counsel claims under the two-prong test set forth in *Strickland.* To prevail under *Strickland*, a defendant must prove (1) that his counsel's performance was deficient and (2) that this deficient performance was prejudicial. *Id.*

With respect to *Strickland's* performance requirement, "the defendant must show that counsel's representation fell below an objective standard of reasonableness" in light of all the circumstances of the case. *Id.* at 688. Reasonableness is measured "under prevailing professional norms." *Id.* Judicial scrutiny of counsel's performance is highly deferential, and the Court must apply a "strong presumption that counsel's conduct falls

within the "wide range of reasonable professional assistance." *Id.* at 689. With respect to *Strickland's* prejudice requirement, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. A "reasonable probability" is "a probability sufficient to undermine confidence in the outcome." *Id.*

**B.     Application to § 2255 Motion**

Petitioner alleges that Perez violated his Sixth Amendment right to effective assistance of counsel based on her alleged failure to investigate multiple aspects of his case. Dkts. 1, 2, 14, 16. The Sixth Amendment imposes a duty on counsel to make reasonable investigations or to make reasonable decisions that render particular investigations unnecessary. *Strickland*, 466 U.S. at 691. "[A] particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments." *Id.* at 691. In the absence of a strategic reason not to investigate, an attorney's failure to conduct a reasonable investigation may constitute deficient performance. *Rios v. Rocha*, 299 F.3d 796, 805 (9th Cir. 2002).

Petitioner alleges that Perez failed to investigate his version of events concerning the search and failed to investigate the validity of his predicate conviction and order of removal. Dkts. 1, 2, 14, 16. The Court addresses each of Petitioner's theories in turn.

**1.     Failure to Investigate: Motion to Suppress**

Petitioner first contends that Perez was ineffective because she failed to interview Mercado before the evidentiary hearing on the motion to suppress. Dkt. 1 at 4. Petitioner

asserts that Perez had a duty to independently investigate Mercado's version of events concerning the search and her alleged lack of English language fluency. *Id.*; *see also* Dkt. 2 at 6–9. Petitioner argues that Mercado's testimony would have supported his theory that neither he nor Mercado provided voluntary consent to search.

Through an unsworn declaration, Mercado states she would have testified that the consent she provided was not voluntary because (1) she did not understand English well enough to provide consent, (2) she felt pressured by the agents to sign the consent form, and (3) the agents represented that the consent form she did sign only encompassed a car, not her home and/or its outbuildings. Dkt. 2 at 19. Regarding prejudice, Petitioner alleges that the Court would have granted his motion to suppress had Perez interviewed Mercado, learned these facts, and called her as a witness at the hearing. Dkt. 14 at 4.[5]

The Government argues that Perez made a reasonable, strategic choice to not call Mercado after learning that she had previously stated under penalty of perjury that she was fluent in English. Dkt. 8 at 8. Prior to the hearing on the motion to suppress, the Government provided Perez with a form from Mercado's immigration file where Mercado had sworn she was fluent in English. Dkt. 8-1 at 7 ¶ 23.[6] The Government argues that after it provided Perez with this sworn statement, it was reasonable for her to

---

[5] Petitioner also alleges that Mercado "was threatened by the officers that she would go to jail and loose [sic] their children—including their two blind daughter [sic]—if she did not consent to the search of their home," but this allegation does not appear in Mercado's own declaration. *Compare* Dkt. 16 at 3 *with* Dkt. 2 at 19. Thus, to the extent Petitioner incorporates this allegation in his declaration, the Court finds it conclusory and declines to consider it. *James v. Borg*, 24 F.3d 20, 26 (9th Cir. 1994) ("Conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief.").

[6] CM/ECF pagination used throughout.

decide not to call Mercado. Dkt. 8 at 8. The Government also contends that Perez cannot be found deficient based on her decision not to suborn perjury. *Id.* (citing *Nix v. Whiteside*, 475 U.S. 157, 171 (1986) (holding right to effective counsel not violated when attorney refused to present defendant's suggested perjured testimony)). Finally, the Government asserts that Perez's decision not to interview Mercado is excused by the fact that Mercado could no longer be called to testify on Petitioner's behalf. Dkt. 8 at 9.

The Court concludes that Perez's decision not to interview Mercado or call her as a witness, after learning about her prior sworn statement, falls within the wide range of reasonable professional judgment that is acceptable under *Strickland*. Perez's choice to discontinue investigation was based on evidence that Mercado had sworn under penalty of perjury that she was fluent in English. At the hearing, the main goal of Mercado's testimony was to challenge the veracity of the version of events concerning the search as presented by law enforcement, and thus, her usefulness as a witness hinged on this Court's ability to credit her testimony. Perez made the choice to discard Mercado as a witness, declining to interview her, only after Perez viewed evidence demonstrating Mercado would have to commit perjury in order to testify favorably for Petitioner. The Court is not persuaded that Perez was acting outside the bounds of acceptable performance when, in lieu of presenting a witness who would have promptly been impeached on a key issue by prior sworn testimony, she decided to reformulate the defense and instead attack the Government's position through cross examination.

It may well have been prudent for Perez to interview Mercado. However, based on her reasonable assumption that the Court would not credit Mercado's testimony in light

of the sworn statement, Perez's choice not to interview her further can be considered a matter of strategy. Perez Decl. ¶ 6. "[S]trategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Strickland*, 466 U.S. at 690–91; *see also Rios*, 299 F.3d at 806 (decision to forego a defense as a matter of strategy or tactic must be based on reasoned assumptions) (citations omitted). Said another way, it would be illogical to find Perez deficient because she declined to interview a witness who if put on the stand would testify contrary to, and thus be impeached by, the witness's prior sworn statement concerning the key issue of the motion. Moreover, Perez was concerned about introducing evidence through Mercado that would have aided the Government's theory that she spoke English well enough to provide voluntary consent to search. Perez Decl. ¶ 6. Unlike the attorney in *Rios*, who made a choice to abandon a defense after interviewing only one of more than fifteen eyewitnesses to his client's alleged commission of a homicide, 299 F.3d at 805–06, Perez based her decision about how to approach Petitioner's suppression hearing based on documentary evidence rejecting the core premise of his eyewitness's testimony—that she did not understand English. It is of no matter that the evidence fatal to Mercado's testimony was produced by the Government and not discovered by Perez through an "independent" investigation. The information was submitted by Mercado herself, and the Government was simply in a better position to access it and turn it over. On this record, Petitioner has failed to establish deficient performance.

Petitioner also fails to show prejudice regarding Perez's failure to interview Mercado. Petitioner suggests that if Perez had done so, she would have learned that Mercado's immigration form was prepared by someone else. Yet Mercado signed the immigration form under penalty of perjury and, in doing so, certified under oath that the responses on the form were true and correct. Dkt. 8-1 at 15, 16. Thus, it would not have mattered that someone else prepared the form for her. In other words, she still would be required to testify inconsistently with her prior statement that she was fluent in English at the hearing. This testimony would have damaged Mercado's credibility on the key issue before the Court and may have weakened Petitioner's position on the motion. Further, the Government points to other evidence in the record, such as the testimony of an agent with personal knowledge of Mercado's English comprehension, which the Court agrees would make unlikely any finding crediting Mercado's testimony over that of the testifying law enforcement officers. Dkt. 8 at 9 (citing CR, Dkt. 112 at 30, 38, 47, 103–04, 132–34, 172–74). Consequently, even if Perez interviewed Mercado and called her to testify, Petitioner has not demonstrated with reasonable probability that the outcome of the proceeding would have been different—i.e., that the Court would have suppressed the methamphetamine and firearms seized from his house. Accordingly, Petitioner fails to demonstrate prejudice on this issue.

In sum, the Court denies Petitioner's claim of ineffective assistance based on Perez's failure to investigate and interview Mercado concerning the search. To the extent Petitioner asserts that Perez performed deficiently by failing to call him to testify to the lack of consent theory at the hearing, Dkt. 2 at 6–9, Petitioner is presumed to have

assented to this decision, *United States v. Joelson*, 7 F.3d 174, 177 (9th Cir. 1993) (citing *United States v. Edwards*, 897 F.2d 445, 446–47 (9th Cir. 1990)). Moreover, because the record reveals that Petitioner did not insist on testifying, speak to the Court, or discharge Perez, *see id.* (citation omitted), he waived his right to testify by conduct. Thus, Petitioner fails to show deficient performance regarding Perez's failure to call him as a witness.

Regarding prejudice, Petitioner also fails to establish that the outcome of the hearing would have been different even if Perez had called him to testify. At the hearing, the Government introduced two exhibits demonstrating that Petitioner spoke and understood English, as well as testimony from at least three law enforcement officers indicating the same. CR, Dkt. 112. Given this evidence, Petitioner has not established that the Court would have credited his testimony over the other evidence introduced by the Government. Petitioner thus fails to show with reasonable probability that the Court would have granted his motion even if Perez called him as a witness at the hearing. Therefore, to the extent Petitioner asserts a claim against Perez on this basis, the motion is denied.

### 2. Failure to Investigate: Predicate Conviction & Removal Order

Petitioner next contends that his guilty pleas on counts two and three were involuntary because Perez failed to investigate his predicate criminal conviction and order of removal, which he asserts are each constitutionally infirm. Dkt 1 at 5. "[A] defendant who pleads guilty upon the advice of counsel may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel" constituted ineffective assistance—that is, that the advice constituted deficient

performance and prejudiced the defense. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985). "In the context of a plea, a petitioner satisfies the prejudice prong of the *Strickland* test where 'there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial.'" *Smith v. Mahoney*, 611 F.3d 978, 986 (9th Cir. 2010) (quoting *Hill*, 474 U.S. at 59).

          a.        **Predicate Criminal Conviction**

In 2009 Petitioner was convicted of possession of methamphetamine with intent to distribute ("the 2009 conviction") following his plea of guilty to that charge. CR 08-5312BHS, Dkt. 54. When Petitioner was arrested in the instant case, the 2009 conviction became the predicate offense for the felon in possession of a firearm charge (count two) that Petitioner now challenges through the instant motion. Relying on *Padilla v. Kentucky*, 559 U.S. 356 (2010) ("*Padilla*"), Petitioner contends that his prior counsel rendered ineffective assistance by failing to provide competent immigration advice regarding the 2009 conviction. Specifically, Petitioner alleges that prior counsel failed to advise him that pleading guilty to a felony drug offense would result in his near certain deportation. Petitioner ties this alleged deficiency to Perez's performance on the instant conviction by asserting that she failed to undertake reasonable investigation into the 2009 conviction and, had she done so, she would have discovered its alleged infirmity based on prior counsel's allegedly deficient advice.

On this issue, Petitioner's claim against Perez fails because the Supreme Court has held that *Padilla* is a new rule of criminal procedure not retroactively applicable on collateral attack. *Chaidez v. United States*, 568 U.S. 342, 353 (2013) ("*Chaidez*"). Thus,

even if Petitioner's prior counsel did perform deficiently in connection with his 2009 conviction, Petitioner cannot rely on this rule because his 2009 conviction became final prior to the date the Supreme Court issued *Padilla*.

A conviction that is not appealed becomes final 14 days after the court enters a judgment on the conviction. *United States v. Schwartz*, 274 F.3d 1220, 1223 (9th Cir. 2001). In this case, Petitioner's 2009 conviction became final on March 9, 2009, which is 14 days after the Court entered judgment on the matter. CR 08-5312BHS, Dkt. 54. *Padilla* was decided on March 31, 2010. 559 U.S. at 356. Because relief as to Petitioner's 2009 conviction is not retroactively available under *Padilla* and *Chaidez*, Petitioner fails to demonstrate ineffective assistance and prejudice as to his 2017 conviction on this claim, even if his allegations regarding Perez's failure to investigate are assumed true.

Additionally, even if Petitioner sought to apply the benefit of *Padilla* to his 2009 conviction, through narrow exceptions potentially available to federal prisoners as left open in *Chaidez*, *see* 568 U.S. 342 n.16, he would have needed to timely file a post-conviction motion seeking such relief as to the 2009 conviction. Petitioner did not file such a motion. No. CR 08-5312BHS. Therefore, for all the foregoing reasons, the Court denies Petitioner's motion on this issue.

**b.     Predicate Order of Removal**

Petitioner's 2009 conviction resulted in his deportation from the United States. Dkt. 2 at 10–13. When Petitioner was arrested, and thus found inside the United States in 2015, this prior deportation formed the basis for count three: unlawful re-entry in violation of 8 U.S.C. § 1326.

To convict Petitioner of unlawful re-entry under § 1326, "the government must prove that [Petitioner] left the United States under order of exclusion, deportation, or removal, and then illegally reentered." *United States v. Martinez*, 786 F.3d 1227, 1230 (9th Cir. 2015) (quoting *United States v. Alvarado-Pineda*, 774 F.3d 1198, 1201 (9th Cir. 2014)). "A noncitizen charged with illegal reentry therefore has a Fifth Amendment right to collaterally attack his removal order because the removal order serves as a predicate element of his conviction . . . ." *Id.* (quoting *Alvarado-Pineda*, 774 F.3d at 1201) (citations and internal quotation marks omitted).

In light of his right to collaterally attack his removal order in his criminal proceeding, Petitioner contends that Perez failed to reasonably investigate the circumstances of his prior deportation. Petitioner asserts that had Perez done so, she would have found that he was deprived of due process in his removal proceeding and he would not have pled guilty to unlawful re-entry. Dkt. 2 at 10. At minimum, Petitioner asserts Perez should have examined his removal proceedings for defects. *Id.*

The Government argues that Petitioner's claim fails for three reasons: first, he fails to provide evidence supporting the assertion that Perez did not investigate his underlying removal order, second, he fails "to meet the legal requirements for a successful collateral attack," and third, the record belies "his allegation that he was deprived of due process in his deportation proceedings . . . ." Dkt. 8 at 5, 11–15. The Court disagrees with the Government's first reason because Petitioner's claim that Perez failed to investigate his removal proceedings is supported by some evidence. Petitioner filed a statement of facts asserting that Perez failed to investigate the circumstances of his removal proceedings.

Dkt. 2 at 10–13. Although the Court acknowledges that this allegation is somewhat conclusory, Perez responded to Petitioner's other claims in detail, yet her declaration is noticeably silent regarding her investigation, or lack thereof, into Petitioner's removal proceedings. *See* Perez Decl. Perez's failure to respond to Petitioner's specific allegation indicates that it may have merit. Thus, at minimum, Petitioner relies on more than a "bare assertion" regarding Perez's investigation into his removal proceeding. Therefore, the Court does not find Petitioner's allegations on this issue too conclusory for consideration.

However, the Court agrees that the second and third reasons provided by the Government are dispositive. First, even if Perez did fail to investigate his removal proceedings, Petitioner has not shown that a collateral attack on his order of removal would succeed. To mount a successful collateral attack on an order of removal, Petitioner must demonstrate that "(1) he has exhausted any administrative remedies that may have been available to seek relief from the order; (2) the deportation proceedings at which the order was issued improperly deprived him of the opportunity for judicial review; and (3) the entry of the order was fundamentally unfair." *United States v. Ochoa*, 861 F.3d 1010, 1014–15 (9th Cir. 2017) (citing 8 U.S.C. § 1326(d)). "An underlying order is fundamentally unfair if (1) a defendant's due process rights were violated by defects in his underlying deportation proceeding, and (2) he suffered prejudice as a result of the defects." *Martinez*, 786 F.3d at 1230 (quoting *Alvarado-Pineda*, 774 F.3d at 1201) (citation and internal quotation marks omitted). In this case, Petitioner fails to meet even the first element because he has not shown that he exhausted the administrative remedies applicable to removal proceedings. Indeed, and despite his allegation to the contrary, the

record shows that Petitioner unequivocally waived his right to appeal at his deportation proceeding. Dkt. 8-1 at 44–45. "[A]n alien is barred from collaterally attacking the validity of an underlying deportation order if he validly waived the right to appeal that order during the deportation proceedings." *United States v. Reyes-Bonilla*, 671 F.3d 1036, 1043 (9th Cir. 2012) (citing *United States v. Gonzalez*, 429 F.3d 1252, 1256 (9th Cir. 2005)). Although Petitioner asserts that the immigration judge failed to advise him of potential relief under 8 U.S.C. § 1182(h), he fails to plead sufficient facts explaining his eligibility for that relief and thus fails to establish that a due process violation excusing him from the exhaustion requirement occurred. *See United States v. Guzman-Ibarez*, 792 F.3d 1094, 1100 (9th Cir. 2015). Having otherwise validly waived his ability to challenge his removal order, Petitioner fails to demonstrate with reasonable probability that a collateral attack on the order would succeed. Therefore, Petitioner fails to make a showing of prejudice on this issue.

Second, the Court agrees with the Government that Petitioner's factual allegations concerning his removal proceedings are unsupported by the record of those proceedings. Dkt. 8-1 at 40–46. Accordingly, the Court denies Petitioner's motion on the issue of Perez's alleged failure to investigate his predicate order of removal.

**C.     Evidentiary Hearing**

Courts should hold a hearing on a § 2255 motion unless the motion, files, and underlying records of the case "conclusively show" that the petitioner is not entitled to relief. 28 U.S.C. § 2255(b). For the same reasons that the Court denies the motion, the Court concludes that an evidentiary hearing is not required because Petitioner has not

stated a claim of ineffective assistance of counsel under any legal theory as conclusively shown on the records before the Court.

**D.  Certificate of Appealability**

A petitioner seeking post-conviction relief under § 2255 may appeal a district court's dismissal of his federal habeas petition only after obtaining a certificate of appealability (COA) from a district or circuit judge. A COA may issue only where a petitioner has made "a substantial showing of the denial of a constitutional right." *See* 28 U.S.C. § 2253(c)(2). A petitioner satisfies this standard "by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 327 (2003). The Court concludes that Petitioner is not entitled to a COA with respect to any of his asserted claims.

### III.  ORDER

Therefore, it is hereby **ORDERED** that Petitioner's motion to vacate, set aside, or correct sentence, Dkt. 1, is **DENIED**.

The Clerk shall enter **JUDGMENT** and close this case.

Dated this 30th day of January, 2019.

BENJAMIN H. SETTLE
United States District Judge